# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2181

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Shaun Emery White, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 8, 2004

Filed: May 17, 2004

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
Judges.

_____

WOLLMAN, Circuit Judge.

Pursuant to a plea agreement, Shaun Emery White pleaded guilty to one count
of aggravated assault in exchange for dismissal of three remaining counts against him
and the government's promise not to pursue additional firearm and drug charges.
Because White was also facing an undischarged term of imprisonment with the State
of Minnesota, the parties further agreed to recommend that White's federal prison

sentence run concurrent with his State time. Although the district court[1] did not voice objection to this recommendation at the change-of-plea hearing, it declined to follow it at sentencing, instead imposing a consecutive sentence of 63 months of imprisonment followed by three years of supervised release. White appeals, arguing the district court failed to articulate an adequate justification for rejecting the concurrent-time recommendation and erred in imposing a consecutive sentence. We affirm.

## I.

On December 15, 2001, White attended a party at a home located on Minnesota's Red Lake Indian Reservation. After an evening of drinking and drug use, White and his co-defendants, Anthony Smith and Frederick Fisher, brutally assaulted Ronald Long. Smith first hit Long over the head with a bottle and then fired a handgun past Long. The three men then dragged the bleeding Long into the basement and beat him while holding him at gunpoint. According to White, he and Smith struck Long in the head with their handguns while Fisher kicked Long.[2]

At the time of the assault, White was still subject to a stayed 30-year Minnesota prison sentence for a second-degree murder conviction that occurred when White was a juvenile. White's involvement in the assault ultimately triggered execution of the stayed prison sentence, and White approached plea bargaining in his federal case with the state sentence in mind. Paragraph five of White's plea agreement specified that White's likely imprisonment range for the assault would be 63-78 months. The

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[2]Although White went to bed after the beating, Smith was fearful that Long would inform the authorities. With the aid of a female accomplice, Smith drove Long to a remote area of the Reservation and shot him dead.

agreement further provided that "[t]he parties will recommend that this sentence be served concurrently with [White's] state sentence for second degree murder (360 months)."

At the change-of-plea hearing, the parties acknowledged the importance of the concurrent-time recommendation, and the district court did not express concern over the provision. Nevertheless, the plea agreement itself specified that the court would determine if White's sentence would be concurrent or consecutive, and both the government and the district court made clear that the recommendation for concurrent time was not binding:

> [Government]: Now, we're going to recommend that your sentence be served concurrent to your current State sentence that you got from [the state judge]. Do you understand the Judge is going to make a decision on whether or not it's concurrent or consecutive? But the parties are going to argue to the court that it should be concurrent. Do you understand that?
>
> [White]: Yes . . . .
>
> [Government]: You understand that the Judge has the right to order your sentence to be concurrent or consecutive, and there's no way that we can bind him in that decision?
>
> [White]: Yes . . . .
>
> [Court]: Now, what was discussed here a few minutes ago, so let's touch on it briefly here, do you understand that under this agreement, for whatever reason if I would not impose a concurrent sentence and I would make it consecutive, which means you'd have to serve it on top of your existing State sentence, while you would have the right to appeal under the agreement . . . neither side could withdraw from the plea

agreement . . . . You can appeal that decision, but you can't say I want my trial. Do you understand that?

[White]: Yes.

Change-of-Plea Hr'g Tr. at 14, 17, 27-28. At sentencing, the district court declined to follow the recommendation that White's federal sentence run concurrent with his state sentence, noting that "I can't step away from the bench looking at the law realizing that you won't do any time on this charge . . . . I believe you should do the additional time, and I believe it's fair and appropriate under the law based upon all the facts and circumstances." Sentencing Hr'g Tr. at 31-32. White challenges this decision.

## II.

A district court's acceptance of a plea agreement creates a reasonable expectation that the court will honor the agreement's basic terms, see United States v. Harris, 70 F.3d 1001, 1002-03 (8th Cir. 1995), and "[l]est they desire to have trials on all criminal matters, district courts should be wary of conduct which tends to undermine the trust [defendants] place in the deals they strike with prosecutors." United States v. Shields, 44 F.3d 673, 675 n. 2 (8th Cir. 1995). That said, the district court here did nothing untoward. Sentencing recommendations are just that – recommendations – which do not bind the district court. See Fed. R. Crim. P. 11(c)(1)(B). All involved took pains to inform White that the district court was not a party to the plea agreement and that a consecutive sentence was possible. When the court took White's plea and ultimately accepted the plea agreement, it was merely accepting the parties' joint, non-binding recommendation that White receive concurrent time, nothing more.

White notes that at the change-of-plea hearing, the district court mentioned that it would inform the parties if there was anything objectionable in the plea agreement, yet it did not voice any concern regarding the concurrent-time recommendation. Given the care with which White was advised that there was no assurance that the district court would impose a concurrent sentence, we do not believe that the district court's decision not to characterize the concurrent time-recommendation as objectionable can fairly be read as somehow misleading White into believing that such a sentence would be imposed. The district court did nothing to suggest, either explicitly or implicitly, that it would impose a concurrent sentence, and there was no corresponding obligation that the court reject the plea agreement or indicate that it might impose a consecutive sentence.

White contends that the district court failed to supply reasons for its decision and did not properly analyze his case under the relevant United States Sentencing Guideline (U.S.S.G.), § 5G1.3 (2002). We review these matters de novo, see United States v. Smith, 282 F.3d 1045, 1046 (8th Cir. 2002), and we disagree. Interpreting the version of § 5G1.3 that applies to White's case, our court has previously held that application note 6 to § 5G1.3 mandates imposition of a consecutive sentence for defendants in White's position. See Smith, 282 F.3d at 1048 (analyzing U.S.S.G. Manual § 5G1.3, cmt. n. 6 (2002)). We note that the Sentencing Commission subsequently declined to adopt Smith's mandatory reading of application note 6 in later amendments to the Guidelines, but the Commission has continued to recommend that a consecutive sentence be imposed. See U.S.S.G. Manual app. C, amend. 660 (Supp. II 2003) (resolving a circuit split and indicating that imposition of a consecutive sentence is not required but nevertheless recommended).

Even assuming that the district court had the authority to order a concurrent or partially concurrent sentence in this case, the district court

supplied more than adequate justification for its decision otherwise. Under the applicable version of § 5G1.3, the court was required to impose a reasonable punishment and avoid unwarranted disparity by considering numerous factors in 18 U.S.C. § 3584 and:

> (a) the type . . . and length of the prior undischarged sentence;
>
> (b) the time served on the undischarged sentence and the time likely to be served before release;
>
> (c) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
>
> (d) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S.S.G. § 5G1.3 cmt. n. 3 (2002).

The record here reflects the district court's careful consideration of applicable factors in an attempt to strike an appropriate balance. The district court acknowledged the grief Ronald Long's family had suffered and gave due consideration to White's age, unfortunate childhood, mental illness, drug abuse, and prior involvement in criminal activity. The district court then took into account the likely length of White's state sentence and the amount of credit White might receive thereon. Having considered all of these factors, the district court chose the lowest available term under the Guidelines, 63 months, rather than imposing the maximum term of 78 months. The district court's concern that a concurrent sentence would mean "no time" for White was thus a well-considered determination that concurrent time would not fairly punish White for his participation in the assault.

The judgment is affirmed.

_____